## Karcher v. City of Louisville.

(Decided March 26, 1926.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Fourth Division).

1. Nuisance—One Complaining of Operation of Public Incinerator on Land Sold by Wife at His Own Instigation is Not Entitled to Relief, if he Might have Foreseen Injury.—If plaintiff, complaining of operation of public incinerator on property sold by his wife to city through his own efforts, might have foreseen injury of which he complained at time of making sales, he is not entitled to relief therefrom.

2. Appeal and Error—Finding of Fact of Trial Court in Common-Law Action, Supported by Evidence, is Entitled to Same Weight as Verdict of Properly Instructed Jury.—Finding of fact of trial court in common-law action, supported by evidence, and by stipulation of parties made part of record, is entitled to same weight as verdict of properly instructed jury.

3. Appeal and Error—Facts Found by Lower Court in Actions at Law Must be Accepted in Court of Appeals when Supported by Evidence, Even though Preponderance of Evidence is to the Contrary.—Facts found by lower court in actions at law must be accepted by Court of Appeals when supported by sufficient evidence, even though there is preponderance of evidence to contrary.

4. Estoppel—Plaintiff, who Induced City to Purchase Incinerator from His Wife, Representing that Garbage and Dead Animals could be Burned Therein, is Estopped Thereafter to Complain of City's Use of Incenerator for such Purpose.—Where plaintiff, at time sale of incinerator plant was made by his wife to city, represented to city that incinerator could be used for burning and de-

struction of dead animals and destruction of garbage, he was estopped from thereafter complaining of city's use of incinerator for such purposes.

EUGENE HUBBARD for appellant.

WILLIAM T. BASKET and GROVER G. SALES for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This action was commenced by appellant, Karcher, against the city of Louisville to recover damages for the construction, maintenance and operation of a public incinerator in close proximity to his residence near Camp Taylor, which incinerator it is alleged was used for the burning and destruction of dead bodies and gave off offensive and obnoxious fumes and odors which permeated his home and premises and rendered it unfit for residential purposes. The answer denied the material averments of the petition with respect to the maintenance of a nuisance, and further pleaded that appellant, Karcher, for a valuable consideration sold, transferred and conveyed by deed of general warranty to appellee city the incinerator plant to be used by it for the burning and destruction of dry and wet garbage, including dead animals gathered from the streets and public places of the city, at the time knowing, from having operated the incinerator for the government when owned by it as a part of the military camp, that the incinerator was intended for the burning and destruction of all such garbage, including dead animals, and that the city intended to so employ it and would so employ it, and it was purchasing the incinerator for that purpose only, and is now estopped to claim that the incinerator plant is a nuisance or to demand damages for its operation by the city. A reply made up the issues. The parties stipulated as follows:

"1st: Eight cases in the various divisions of the Jefferson circuit court in the city of Louisville growing out of the same state of facts have been tried before two juries and unanimous verdicts rendered in all cases on behalf of the plaintiff, four for five hundred dollars and four for seven hundred and fifty dollars each respectively.

2nd: It is agreed by and between the plaintiff and defendant for the purpose of this trial, that the

evidence heard upon the other trial of the cases may
be considered as given in this case, and that the pre-
ponderance of the evidence introduced upon the trial
of the cases was that the incinerator plant in contro-
versy was operated so as to give offensive odors and
offensive sights and was a nuisance, and that it
created a condition which decreased the enjoyment
of the property in the neighborhood, including the
plaintiff's property.

3rd: It is further stipulated and agreed that
the plaintiff recover of the defendant the sum of five
hundred dollars with costs in this action because of
the foregoing facts unless as a question of law he is
estopped by reason of the sale of property to the
defendant by his wife upon which the plant was
operated and maintained.

4th: It is further stipulated and agreed that if
as a question of law the plaintiff is estopped by
reason of the sale of the property as set forth in the
pleadings herein, then in that event the plaintiff shall
not be entitled to recover but the defendant shall re-
cover of the plaintiff its cost herein expended.''

Certain evidence taken and considered in other cases
of like nature was read and considered by the court upon
the trial of this case, and the court entered judgment dis-
missing the petition, and Karcher appeals.

On motion of appellant the court made separate find-
ings of law and of fact, which are as follows:

"It appears from the pleadings and evidence
that the United States government, prior to the 1st of
June, 1922, was the owner of a large tract of land in
Jefferson county, Kentucky, near the city of Louis-
ville, upon which was located Camp Zachary Taylor,
a place for military assemblage and the training of
soldiers; that upon the discontinuance of Camp Tay-
lor by the federal government, the acreage compos-
ing the tracts of land constituting the camp was sold
by military authorities at public auction; that the
plaintiff became the purchaser of about fifty acres,
upon which was located an incinerator plant, used
by the government in the burning of wet and dry
garbage and amputations coming from the hospital
of the camp; that plaintiff sold about three acres of
his purchase from the government to the defendant,
city of Louisville, including the incinerator plant

located thereon; that plaintiff operated the plant for the government and was continued in such employment for a short time by the city of Louisville after its purchase; that the plaintiff, being a farmer and desiring to dispose of the incinerator plant and so much of the ground as was necessary for its operation, employed Mr. B. F. Gardner, an attorney of the local bar, for that purpose; that Mr. Gardner, in pursuance of his authority from the plaintiff and the latter's wife, entered into negotiations with Mr. Thomas Crutcher, the chairman of the board of public works of the city of Louisville, for the sale of the ground and plant; and that Mr. Gardner stated to Mr. Crutcher that the plaintiff represented to him that the plant was used for burning wet and dry garbage and amputations from the hospital, and that on one occasion a dead mule was brought to the plant and put into the furnace and entirely consumed by the flames without leaving any disagreeable odor. Mr. Gardner further testified that the plaintiff told him that the incinerator was equipped to burn animals and that it contained the machinery necessary for drawing dead animals into the furnace; that plaintiff had actual knowledge, while employed at the incinerator by the federal government, that the plant burned amputations from the hospital, condemned meats and on one occasion a dead mule; that he had knowledge and notice that the purpose of the defendant, city of Louisville, in purchasing the incinerator plant was to apply it in destroying carcases of small animals, such as cats and dogs, and that when occasion required, the bodies of larger animals.''

Upon these facts the court based the following conclusions of law:

''The owner of property or one having an interest therein, who conveys it to another with knowledge of the purpose for which it is purchased or the use to which it is to be applied, is not in a position to complain that the use of the property, bought for a specific purpose, constitutes a nuisance. The proof is quite convincing that plaintiff knew of the intention of the officials of the city of Louisville, while negotiating for his property, to use it as a plant for the incineration of dead animals, as well wet and dry garbage; and it also is equally clear

that the plaintiff was active in impressing upon the representatives of the city the capacity and fitness of the plant for the purpose for which it was sold."

Complaining of the judgment appellant now insists that he is not estopped to recover damages for the alleged nuisance maintained by the city because his wife sold to appellee the three acres of land upon which the incinerator was located, he joining in the deed, and he relies upon the case of Corley, &c. v. Lancaster, 81 Ky. 172. The facts of that case were very different from those now before us. There a distiller erected a large plant near the residence of the plaintiff. As appurtenant to the plant he erected large stables and sheds in which he confined cattle, hogs and other animals to which he fed the still slop and other refuse from the distillery, and the offal and refuse from the barns and sheds were allowed to run down into the creek which passed in front of the residence of plaintiff, poisoning the water of the creek, rendering it unfit for use and giving off nauseating and unwholesome odors, making his home uninhabitable. There the nuisance was not altogether a public one, but more offensive to the complainant than to other persons living in that neighborhood. But it was held, "It does appear in this case that other persons suffered injury from the alleged nuisance, but that is not a sufficient reason to deprive appellants of their right to maintain this action, if it be true that the water of the creek has been injured, and the air they breath has been poisoned and corrupted by the act of appellees, whereby the enjoyment of their property has been rendered essentially uncomfortable and inconvenient." There was no consent or acquiescence in the establishment of the nuisance amounting to estoppel in that case.

Another case cited and relied upon by appellant is Barkau v. Knecht, 9 Ohio 66, where it was in substance held that the mere fact that an adjoining property owner was present and made no objection to the erection of a building for carrying on the business of rendering the bodies of dead animals, tripe, offal, etc., for the manufacture of fertilizer, that he at times gave advice to the builders, loaned them a wheelbarrow, took with them a glass of beer, or even stated that he did not think the business would be objectionable to him, being assured that it would not be conducted in a manner to be objectionable—nothing that he said or did having influenced

in any way the course of conduct of the builders in putting up the establishment—do not estop him from maintaining an action brought promptly to enjoin the operation of the plant, upon its proving to be a nuisance.

In answer to the foregoing argument and authorities, appellee city asserts that where a husband negotiates the sale of his wife's property, an incinerator, to a city for the purpose of destroying the bodies of dead animals, wet and dry garbage, he is estopped to complain that the use of the property for the precise purposes for which it was sold constitutes a nuisance damaging him in the enjoyment of other property owned by him. The general rule with respect to estoppel in nuisance cases is stated in 20 R. C. L. 495, as follows:

"It is true, as a general proposition, that one who voluntarily places himself in a situation whereby he suffers an injury will not be heard to say that his damage is due to a nuisance maintained by another, a principle which is expressed by the maxim *volenti non fit juria.* The test of liability here, as in other situations, is the knowledge of the plaintiff respecting the consequences of his conduct. If it appears that he foresaw or might have foreseen the injury of which he complains, he will not be granted the relief which he prays."

A case somewhat in point is L. & N. R. R. Co. v. Daugherty, 18 Ky. L. R. 273. The railroad company built a dam creating a pond about 80 yards from the premises of complainant. There had been a dam at the place before but it was smaller and so constructed that a rivulet which ran through it was permitted to pass on to the main creek; the dam as located by the railroad company was much higher and longer and accumulated a lot of filth and vegetation which decayed and in dry seasons gave off offensive and unwholesome odors. In that case we held the company was at least entitled, before suit was commenced, to notice from the complainant that the pond was offensive and obnoxious, it having been shown that the complainant had actually procured the railroad company to build the dam and create the pond. In the course of the opinion we said:

"If the ground on which the pond was constructed had been purchased from appellees and used for the purpose for which it had been bought,

the vendors knowing that purpose, and from the condition of the old dam and previous accumulations of decayed matter, had reason to believe that such accumulations would continue or be increased by reason of the new structure, and they yet sold the ground for that purpose and consented to the construction, then no action could be maintained at all. And where, though not the owners of the pond site, they procured or aided in procuring it for another, knowing or having reason to know, from previous observation of similar conditions there, that vegetable matter would work into the pond and become offensive and unwholesome, their continuous consent to such use by the parties so aided will be presumed until such consent is withdrawn by a notice to that effect or until objection is made to such use. As said in Johnson v. Lewis, 13 Conn. 303, and quoted with approval by this court in West v. L. C. & L. R. R., 8 Bush 408, 'A plaintiff ought not to rest in silence and finally surprise an unsuspecting purchaser by an action for damages, but should be presumed to acquiesce until he requests a removal of the nuisance.' ''

The finding of fact made by the court below is supported by the evidence as well as by the stipulation of parties made a part of the record, and this being a common law action, that finding is entitled to the same weight as the verdict of a properly instructed jury. Excelsior Coal Mining Co. v. Gatliff, 24 R. 682. Atkinson v. Murphy, 205 Ky. 138; Kohler v. Bernheim, 205 Ky. 294.

The facts found by the lower court in actions at law must be accepted by this court when supported by sufficient evidence, even though there is a preponderance of the evidence to the contrary. As will be seen from a reading of the findings of fact, the lower court was convinced that appellant, Karcher, had operated the incinerator for the government and knew that it had been used for the burning and destruction of the bodies of dead animals and the amputations from the hospital of the army camp as well as for the destruction of both wet and dry garbage; and further knew that it was the purpose of the city in purchasing the land and incinerator plant from appellant and his wife, to employ it experimentally and perhaps regularly for the burning and destruction of all kinds of garbage, including the bodies

of dead animals. He was thus cognizant of the purpose for which the city desired the incinerator, and with that purpose in mind sold the plant for his wife to the city to be used by the city in burning and destroying all garbage, including dead animals. The plant had been constructed for that purpose and used and operated by the government for that purpose, from which it follows that he estopped himself to complain of the employment by the city of the incinerator for the purposes for which he sold it to the city, for he voluntarily placed himself in a situation whereby he suffered an injury but which is aptly expressed by the old maxim *volenti non est injuria*. Chicago R. I. & P. R. Co. v. McKone, 42 L. R. A. (N. S.) 709; Mahaney Land Company v. Cayuga Investment Co., 1916C L. R. A. 939; Brokaw v. Carson, 74 W. Va. 240; I. O. O. F. Lodge v. Frelinghuysen, 138 Mich. 350; Curtiss v. Winslow, 38 Vt. 690; Land Development Company v. Powder Mnfg. Co., 40 W. Va. 711; Fertilizer Company v. Scott, 3 Ala. App. 385.

Appellant's second insistence that a public nuisance may also be an actionable private nuisance if an individual suffers injury therefrom in any manner peculiar to himself or differently from others, is undoubtedly sound, but it does not necessarily follow that the individual thus suffering from the operation of a nuisance may subsequently maintain an action for damages if he has induced the establishment and operation of the nuisance. Clearly we think appellant, Karcher, by his conduct in inducing the city to purchase the incinerator to be employed by the city in the burning and destruction of garbage of all kinds from the city, estopped himself to complain of the city's use of the incinerator for the purpose for which it was intended. The facts of this case bring it clearly within the well established rule, and we think the lower court did not err in dismissing appellant's petition.

Judgment affirmed. Judge Dietzman not sitting.