## Pape v. Sutherland.

May 3, 1949.

Stanley B. Mayer, Earl Frankenberger and Pat Rankin for appellant.

Robert E. Hogan and William A. Miller for appellee.

OPINION OF THE COURT BY JUDGE HELM—Reversing.

This is an appeal from a judgement entered on a verdict rendered in the Jefferson circuit court in favor of the appellee.

Appellant in his brief says: "While various grounds were alleged in the motion for a new trial, this brief will be centered solely on the instructions of the trial judge."

This action was the result of an alleged accident between a tractor-trailer, weighing 36,000 pounds, belonging to appellee, and a tractor, weighing 5,000 pounds, belonging to appellant.

About 4 p. m. on July 25, 1946, about five miles

south of Stanford in Lincoln County, a White tractor-trailer, painted red and similar to an A. & P. tractor-trailer, belonging to appellee, James Sutherland, and being driven by his brother, John Sutherland, was going north on U. S. Highway 150 toward Stanford. James Sutherland was traveling in the cab of the tractor-trailer with his brother. They were bringing a load of South Carolina peaches, 350 bushels, to Louisville. At the same time Lewis Lay, who had been to Raleigh, N. C., with two new trailers, was returning to Louisville on the same road in a green Chevrolet-tractor belonging to appellant, Chris Pape.

John Sutherland, when asked if the tractor-trailer which he was driving figured in an accident upon this road, answered: "Well, we was coming about 40 miles an hour down the highway, coming north, and minding our own business * * * and just as we entered this bridge a fellow driving—that Lewis Lay—saw him coming down the road with his lights on—that meant he wanted to pass us—he had his lights on and he was going a good, fast clip." Sutherland said he was traveling on his right side of the highway; that Lay cut in front of the equipment he was driving at "about a 45 degree angle, something like that;" that this forced the equipment he was driving off of the highway; that the right gas tank of the Lay tractor hit the left front fender and wheel of the Sutherland tractor-trailer.

James Sutherland, when asked as to the damage to his equipment, said: "The tractor was setting up, but the front wheels were buckled up under it, and the trailer had torn loose from the tractor and was laying on its side."

John Sutherland says the equipment "was tore up, a complete wreck."

Lay did not have a trailer, only a tractor.

James Sutherland, when describing the accident, said: "We were going 40 miles an hour, towards Stanford on U. S. Highway 150 * * * about 4 o'clock in the afternoon, and the first I saw of the tractor was when it pulled right up alongside of the driver's side. We was going through this bridge, and we were almost out of the bridge, and I felt the jar and heard the scraping

sound, and the next thing I knew I was laying over in the ditch or in the field;" that the peaches "were bruised and mashed up." When asked where his vehicles came to a rest, he said: "They went over the ditch and rested about 75 feet out in the field." The Lay tractor stopped about 200 yards up the road from the place of the accident.

James Sutherland says there was red paint on the gas tank behind the cab of the Lay tractor, a paint mark freshly made and a black tire mark about four inches across and a foot and a half long.

John Sutherland said red paint was scraped off his front fender onto the gas tank of the Lay tractor and that he observed the brush marks, or tire marks, or dents on the Lay tractor.

The Sutherland brothers got out of their tractor and rushed up to Lay. E. J. Noe, sheriff of Lincoln County, was called to the scene of the accident. When asked to forget about the men whom he had apparently been called to quell and to tell about any automobiles there, he stated that there was a truck turned over off the highway, a truck and trailer; that "the trailer and tractor had gone through two fences and the trailer had turned over." The sheriff also made a careful examination of the Lay tractor and states that he did not find any marks where it had been scraped; that he did notice a black place on the tank, but said "there was nothing to show that it had scraped in any way at all" and that he did not find any paint marks on the tank. When asked about small red spots about it anywhere, he said, "I don't remember any red spots about it anywhere. There wasn't no scratches on it. There was just a dirty streak down through there (indicating on a picture in evidence). I don't know what caused that." He stated that the rear wheels of the Lay truck extended out about four or five inches further than the tank. When cross-examined as to the mark on the tank, the sheriff stated it was just a dirty looking streak or mark there; that "it run up and down this way (indicating) * * *, it didn't scrape. It was just a streak." When asked about the tracks made by the Sutherland tractor-trailer as it left the highway, the sheriff answered: "Just after you come off of this culvert here, a few feet

there, the tracks of the Sutherland truck had gradually left the road. * * * It gradually went off there and went through those fences and turned over there.'' When asked if the Sutherland ''outfit'' took a course that veered sharply to the right off of the highway, the sheriff answered: ''Just gradually went off out there for about 70 or 75 feet, and then cut right down, just kept going deeper, and run along the berm of the road * * * and it just gradually went off.'' The sheriff said that the culvert at the scene of the accident is 24 feet long, and the same width as the road, 21 feet. The road at that point is straight 710 feet in one direction and 568 feet in the other.

Lay was dead at the time of the trial. No one was riding with him at the time of the alleged accident.

Appellee in his petition alleges that the difference in the market value of his equipment immediately before and immediately after the accident complained of was $3,750. Appellee proves that the difference in value of the trailer immediately before and immediately after the accident was $1,500 and proved that the cost of repairs of the tractor was $2,296.79.

Instructions were offered by each party. The court declined to give these instructions. In instruction No. 2, which the court gave on his own motion, the jury was told: ''If you find for the plaintiff, James W. Sutherland, you will award to him such sum in damages as you believe from the evidence will represent the difference between the reasonable salable value of his tractor and trailer immediately before and immediately after the accident, not to exceed the sum of $4,100 on that account.'' The verdict of the jury on this count was for $4,100.

An instruction concerning the measure of damages should limit recovery to amount demanded in the petition. 7 Kentucky Digest, Damages, Key 210(2), page 130.

In Dowdy v. McGuire, 216 Ky. 374, 287 S. W. 948, 949, we said:

''The instruction on the measure of damages should have confined the jury in the instant case to the sum alleged. * * * For the failure of the court to properly

instruct the jury upon this item, the judgment is reversed for proceedings consistent herewith.''

See also Consolidated Coach Corporation v. Hopkins, 228 Ky. 184, 194, 14 S. W. 2d 768, 771, where we said:

''Time and again it has been declared to be an elementary rule that instructions must be based on the pleadings.''

Because of the trial court's failure to limit the amount of recovery to the amount claimed in the petition, this case must be reversed.

Appellant also attacks instruction No. 1 given by the trial court, as follows:

''If you believe from the evidence that Lewis Lay, the driver of the tractor of the defendant, Chris Pape, in passing the tractor and trailer of the plaintiff, James W. Sutherland, on the occasion concerning which you have heard evidence, suddenly cut said tractor over to the right and collided with or crowded plaintiff's tractor and trailer off the road, thereby causing plaintiff's tractor and trailer to be damaged, you will find for the plaintiff, James W. Sutherland. Unless you so believe from the evidence, you will find for the defendant, Chris Pape.''

The driver of the Sutherland truck admits that he saw the Lay truck and knew that it was approaching and wished to pass him. That being true, no signal on the part of Lay was required.

Appellee in his brief says:

''The sharp, decisive issue was whether or not defendant's tractor either struck or forced appellee's vehicles off the highway. * *

''In the case of Colyer v. Hudson, 261 Ky. 84, 87 S. W. 2d 92, which was a case involving the forcing of a vehicle from the highway, the Court of Appeals said that the sharp decisive issue presented by the evidence was whether the truck struck Hudson's automobile and caused it to leave the highway, or Hudson's own operation of his automobile was the cause of the accident,

and the Court further held that that issue alone should have been submitted."

The instruction complained of was, it seems, patterned after the instruction in the Colyer case, but some of the essential elements for the instruction there seem to have been omitted from the instruction given in this case.

Appellee in his petition alleges:

"The tractor vehicle of said defendant Chris Pape was caused to, and did, collide with much force and violence with this plaintiff's said vehicles and forced them from the highway into an adjoining and adjacent field, thus thereby demolishing and damaging this plaintiff's said vehicles."

Upon another trial, if one is had and the evidence is substantially the same as that upon the present trial, in lieu of the instruction given, the court should instruct the jury in substance as follows:

"It was the duty of Lewis Lay, driver of the defendant Pape's truck, in overtaking the truck of plaintiff, to pass to the left of it and not again to drive to the right of the center of the road until he was reasonably clear of the plaintiff's tractor and trailer.

"If you shall believe from the testimony that at the time and place referred to and while the truck of the defendant, Chris Pape, was passing the tractor and trailer of the plaintiff, the driver of the defendant's truck negligently turned his truck from its right side of the highway to the left side thereof and thereby caused it to collide with the plaintiff's tractor and trailer, and crowded and forced plaintiff's vehicles from the highway and thereby damaged his vehicles, then the law is for the plaintiff and you should so find.

"Unless you so believe from the testimony, then the law is for the defendant, and you should so find."

The judgment of the circuit court is reversed, with directions for proceedings not inconsistent with this opinion.